UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LENA ELKINS, | CASE NO. 1:11CV2695 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Plaintiff, Lena Elkins seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. For the following reasons, the decision of the Commissioner is affirmed.

**I.    PROCEDURAL AND FACTUAL HISTORY**

On December 1, 2008, Plaintiff filed her applications for benefits alleging disability beginning September 26, 2008. ECF Dkt. #11 at 245-250.[1] The SSA denied Plaintiff's applications initially and on reconsideration. *Id.* at 146-149. On August 5, 2009, Plaintiff filed a request for an administrative hearing. *Id.* at 195-196. On February 1, 2011, an ALJ conducted an administrative hearing where Plaintiff and vocational expert, Dr. Robert Mosely ("VE") offered testimony. *Id.* at 64-97. On May 24, 2011, the ALJ issued a Decision denying benefits. *Id.* at 60-78. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 51-53.

---

[1] Page numbers refer to "Page ID" numbers in the electronic filing system.

On December 13, 2011, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On June 11, 2012, Plaintiff filed a brief on the merits. ECF Dkt. #15. On July 26, 2012, Defendant filed a brief on the merits. ECF Dkt. #16. No reply brief was filed.

## II.  SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ determined that Plaintiff suffered from sarcoidosis, obesity, osteoarthritis, borderline intellectual functioning, and adjustment disorder, which qualified as severe impairments under 20 C.F.R. 404.1520(c) and 416.920(c), through her date last insured, December 31, 2014 ("DLI").  *Id.* at 63.  The ALJ also determined that Plaintiff suffered from several non-severe impairments, diabetes, hypertension, hypercholesterolemia, and hypothyroidism. *Id.* The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.1525, 416.1526). *Id*.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.1567(b), except that Plaintiff is not limited in her ability to push and/or pull; Plaintiff may occasionally kneel and crawl, but may never climb ladders, ropes or scaffolds; Plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases and poorly ventilated areas; Plaintiff must avoid concentrated exposure to workplace hazards (machinery, heights, etc)– no unprotected heights or hazardous machinery; Plaintiff is able to perform simple and complex tasks in a static setting with only occasional changes in routine; Plaintiff is capable of interacting with others on a superficial basis; Plaintiff is capable of making simple decisions. *Id.* at 66. Although the ALJ found that Plaintiff could not perform her past relevant work, she concluded that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, and, therefore, Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits. *Id.* at 72.

## III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and

severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* An SSI claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.     STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings

of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V. ANALYSIS

Plaintiff was born on February 24, 1963 and was forty-five years old on the alleged disability onset date. In this appeal, Plaintiff contends that the AJL erred in concluding that her diabetes was not a severe impairment. Plaintiff further contends that the ALJ failed to properly consider the combined effect of her physical impairments when she concluded that Plaintiff was not disabled.

At the hearing, Plaintiff testified that she has pain in her hips, knees, and hands due to arthritis. *Id.* at 93. Although she tried physical therapy to regulate her pain, she discontinued physical therapy because it caused pain. *Id.* at 106. She takes Percocet for pain management. *Id.* at 105.

Plaintiff loses her breath when climbing steps. She was diagnosed with sarcoidosis[2] in 2001, after a biopsy of her lungs was performed through her nose and produced a half-dollar sized clot. *Id.* at 99-100. Prednisone was prescribed, and she gained "a lot" of weight as a side-effect of the drug. *Id.* at 101. In 2002, she was hospitalized and diagnosed with diabetes, which, according to her testimony, is controlled with insulin. *Id.* at 101-102. Plaintiff discontinued Prednisone approximately one year before the hearing because of her weight gain. *Id.* at 103. She testified

---

[2]Sarcoidosis is characterized by the abnormal formation of inflammatory masses or nodules (granulomas) consisting of certain granular white blood cells (modified macrophages or epithelioid cells) in certain organs of the body. The granulomas that are formed are thought to alter the normal structure of and, potentially, the normal functions of, the affected organs, causing symptoms associated with the particular body systems in question.

that her physician has recommended that she avoid any exertion until she can start taking Prednisone again, however, he is most concerned about her diabetes.  *Id.* at 103-104.

Plaintiff also suffers from hypothyroidism (for which she takes Synthroid) and high blood pressure.  *Id.* at 104.  She testified that her physician recommends weight loss, however she conceded at the hearing that she is "constantly eating sugar, sitting at home, and depressed."  *Id.* at 107.  She does not attend counseling for her depression and she currently weighs 245 pounds.  *Id.* at 106-107.  Four of Plaintiff's eight children, ranging in age at the time of the hearing from thirty to fourteen, live at home and perform the household chores. Plaintiff is restricted from driving at night and testified at the hearing that her son and mother do most of the driving.  *Id.* at 89.

With respect to Plaintiff's sarcoidosis, the ALJ cited diagnostic scans, which supported Plaintiff's allegations of shortness of breath upon exertion and after climbing stairs or walking for ten minutes.  *Id.* at 66.  However, the ALJ rejected Plaintiff's claim that her sarcoidosis was preclusive of all work.  The ALJ cited several physical examinations which established normal breathing results.  Moreover, the ALJ cited a June 29, 2010 report, in which Plaintiff's treating physician assessed her sarcoidosis as stable.  *Id.* at 989.  The ALJ also recognized that, on March 19, 2009, although Plaintiff was prescribed an inhaler when she declined to continue oral steroid treatment due to weight gain and hyperglycemia, she was non-compliant with the use of the inhaler.  *Id.* at 834.

The ALJ acknowledged that Plaintiff alleges chronic severe pain in her back and legs.  However, the ALJ cited x-ray examinations of Plaintiff's knees, dated February 26, 2009, which established only mild to moderate degenerative changes, with no acute bony abnormality.  *Id.* at 810.  She also cited diagnostic imaging of Plaintiff's cervical spine that established facet hypertrophy at the C3-4 joint and joint spurring at the C4-5 joint, without disc herniation, cord compression or canal stenosis.  *Id.* at 687.  Finally, the ALJ cited x-ray examinations of Plaintiff's left hip, dated June of 2008, which revealed minimal osteoarthritis.  *Id.* at 613.

The ALJ further cited physical examinations of Plaintiff, wherein the examining physician reported normal test results.  For instance, a physical examination dated October 13, 2009 established the Plaintiff had full range of motion in her back, without pain, spinal, or paraspinal

-5-

tenderness and that Plaintiff's knees displayed no malalignment, full range of motion without pain and no swelling, warmth or point tenderness. *Id.* at 893. With regard to Plaintiff's knees, a December 21, 2010 report indicated no erythema or edema, and full range of motion with mild crepitus. *Id.* at 1026. Finally, the ALJ acknowledged that Plaintiff received steroid knee injections, which provided good pain relief, but was otherwise non-compliant with treatment, attending only one out of ten scheduled physical therapy sessions, *Id.* at 1046, and never securing a TENS unit.

Turning to Plaintiff's first argument, at step two, a claimant must show that he or she suffers from a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe when it "does not significantly limit [one's] physical or mental ability to do basic work activities." §404.1521(a). The Regulations define basic work activities as being the " 'abilities and aptitudes necessary to do most jobs,' and include: (1) physical functions; (2) the capacity to see, hear and speak; (3) '[u]nderstanding, carrying out, and remembering simple instructions;' (4) '[u]se of judgment;' (5) '[r]esponding appropriately to supervision, co-workers, and usual work situations;' and (6) '[d]ealing with change in a routine work setting.'" *Simpson v. Comm'r Soc. Sec.*, 344 Fed. Appx. 181, 190 (6th Cir. Aug.27, 2009) (quoting 20 C.F.R. §§ 404.1521(a)-(b) and 416.921(a)-(b)).

At step two, the term "significantly" is liberally construed in favor of the claimant. The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §404.1520a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims." *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir.1985). The Sixth Circuit has construed the step two severity regulation as a "*de minimis* hurdle*"* in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p (July 2, 1996).

Once the ALJ determines that a claimant suffers a severe impairment at step two, the analysis proceeds to step three; any failure to identify other impairments, or combinations of impairments, as severe in step two is harmless error. *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987). However, all of a claimant's impairments, severe and not severe, must be considered at every subsequent step of the sequential evaluation process. See C.F.R. §404.1529(d); C.F.R. §§ 416.920(d). Consequently, the ALJ's determination that Plaintiff's diabetes is not a severe impairment does not constitute error at step two.

In her second argument, Plaintiff contends that the ALJ failed to consider her physical impairments in combination. To the contrary, the ALJ analyzed Plaintiff's allegations of severe pain in her back, hips, and knees, as well as her allegations regarding her shortness of breath, separately but considered them in combination in formulating Plaintiff's RFC. However, because the ALJ did not find any support in the objective medical evidence for the severity of Plaintiff's impairments, the disability determination turned on the credibility of Plaintiff's testimony.

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Here, the ALJ found that Plaintiff's impairments could be expected to produce pain and shortness of breath, but not the kind of debilitating pain and shortness of breath that Plaintiff alleged.

It should be noted that the ALJ did not totally reject Plaintiff's allegations, but rather, she determined that Plaintiff's allegations of the intensity, duration and limiting effects of her symptoms were not substantiated by the objective medical findings or other evidence in the record. An ALJ is not required to accept a plaintiff's own testimony regarding his pain. *See Gooch v. Secretary of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987).

The ALJ discounted the degree of many of Plaintiff's impairments due to her failure to follow the course of treatment recommended by her doctors. "An impairment that can be remedied by treatment cannot service as a basis for a finding of disability." *Harris v. Heckler*, 756 F.2d 431, 436 (6th Cir.1985). 20 C.F.R. §404.1530, captioned "Need to follow prescribed treatment," reads, in pertinent part:

> (a) What treatment you must follow. In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.
>
> (b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

*See also* 20 C.F.R. §416.930. Furthermore, the Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. See *Sias v. Secretary of Health & Human Serv's.*, 861 F.2d 475, 480 (6th Cir.1988).

Plaintiff contends that the ALJ did not give proper weight to her impairments in combination. Plaintiff cites her osteoarthritis in her lumbar spine, knees, and hips, particularly her left hip, as well as myalgias in her back, bilateral knees, and bilateral feet. However, in her brief, Plaintiff concedes that "[a]fter testing did not indicate the presence of rheumatoid arthritis, it was determined that poorly controlled hypertension and Type II diabetes were the likely etiologies of [Plaintiff's] symptoms." ECF Dkt. #15 at 1071.

The medical record is replete with references to Plaintiff's failure to monitor and treat her diabetes and hypothyroidism. For instance, on March 19, 2010, Plaintiff was seen by Dr. Thomas A. Murphy regarding her moderately severe type 2 diabetes mellitus, which was diagnosed in 2002, and her hypothyroidism, which was diagnosed in 2001. ECF Dkt. #11 at 915. When Dr. Murphy

-8-

asked how many doses of her levothyroxine prescription that she had missed in the prior month, Plaintiff responded, "Oh, lots of them." *Id.* Plaintiff claimed that she was on a lot of pills and concentrates on taking the ones for pain. *Id.* With respect to her diabetes, she could not identify the generic or brand name of the insulin that she was supposed to be taking. She admitted that, although she just got a meter, she had not been testing her blood. *Id.* Plaintiff failed to monitor her conditions, despite complaints of nocturia, fatigue, blurred vision, and burning in her feet. She conceded that she never had a severe hypoglycemic reaction, but that every other day she experiences hypoglycemia. Dr. Murphy provided the following conclusions: Type 2 Diabetes Mellitus - Control Poor; Lipid Control - Inadequate; Blood Pressure Control -Inadequate; and Hypothyroidism - severe noncompliance. *Id.* at 921. According to Dr. Murphy's notes, he counseled Plaintiff to lose weight through diet modification and appropriate exercise. *Id.* at 927. At the time, Plaintiff was not engaging in any form of exercise. *Id.* at 915. Furthermore, as stated previously, Plaintiff conceded that she is "constantly eating sugar." *Id.* at 107. Accordingly, the ALJ did not err when she rejected Plaintiff's allegations of debilitating pain and shortness of breath based upon her failure to follow prescribed treatment.

## VI.     CONCLUSION

For the foregoing reasons, the decision of the Commissioner is AFFIRMED and Plaintiff's Complaint is dismissed in its entirety with prejudice.


DATE: September 12, 2012

                                      */s/George J. Limbert*
                                      GEORGE J. LIMBERT
                                      UNITED STATES MAGISTRATE JUDGE